UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                                                     :

UNITED STATES OF AMERICA          :

                                :

             - v. -               :          19 Cr. 80 (NSR)

                                :

RAYMOND BRYANT,            :

                                :

              Defendant.       :

                                :

-------------------------------------------------------x

## THE GOVERNMENT'S OPPOSITION TO
## DEFENDANT'S PRETRIAL MOTIONS

 

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

Samuel L. Raymond
Assistant United States Attorney
    *- Of Counsel -*

# Table of Contents

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND .................................................................................................................. 1

I.    The Investigation ...................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.    The Evidence Seized from the Bryant Residence and the Kia Should Not Be Suppressed 2

A.    Applicable Law ......................................................................................................... 3

      1.    Probable Cause .............................................................................................. 3

      2.    Good Faith ..................................................................................................... 5

      3.    No-Knock Warrants ....................................................................................... 6

      4.    Rule 41 ........................................................................................................... 8

B.    Discussion ................................................................................................................. 8

      1.    Judge McCarthy Correctly Found There Was Probable Cause to Search Bryant's Residence and the Kia ............................................................... 8

      2.    In the Alternative, the Agents Relied on Judge McCarthy's Warrants in Good Faith ................................................................................................ 11

      3.    The No-Knock Provision was Proper, and Regardless, Violations of the Knock and Announce Rule Do Not Lead to Suppression ......................... 11

      4.    The FBI Properly Filed a Rule 41 Return .................................................. 12

CONCLUSION .................................................................................................................. 12

## PRELIMINARY STATEMENT

Defendant Raymond Bryant has filed a pre-trial motion to suppress all property seized from his residence at 4 Stewart Avenue in Newburgh, and his Kia.  For the reasons set forth below, the Court should deny Bryant's motion.

## BACKGROUND

### I.    The Investigation

In May 2018, the FBI, City of Newburgh Police Department, and Orange County Sheriff's Office began actively investigating Raymond Bryant, a/k/a "Ray Love," and Trevor Edwards for narcotics trafficking in Newburgh.  On seven occasions, a confidential informant (the "CI") working with the FBI made controlled purchases from Bryant.  During some of these controlled purchases, Bryant was assisted by Edwards.  The CI bought a total of approximately 40 grams of crack during the seven buys.  The Honorable Judith C. McCarthy signed a criminal complaint on December 11, 2018 charging Bryant and Edwards with participating in a narcotics conspiracy, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B).  On the same day, Judge McCarthy also signed search warrants for Apartment 1N at 4 Stewart Avenue in Newburgh (the "Bryant Residence"), and a black Kia Optima (the "Kia") registered in Bryant's name. Each search warrant issued based on an affidavit sworn out by FBI Special Agent Christopher Bryceland (the "Bryant Residence Affidavit," found at Bryant's Suppression Motion Exhibit D, and the "Kia Affidavit," found at Bryant's Suppression Motion Exhibit E, respectively).

On December 13, 2018, FBI agents and officers arrested Bryant and Edwards pursuant to the complaint, and executed the search warrants for the residence and the Kia.  In the residence, agents found, among other things, cash, narcotics paraphernalia, narcotics, and a loaded firearm. In the Kia, agents found a hidden compartment, or trap, containing 2 packages: one containing

1

200 grams of cocaine, consistent with powder cocaine, and the other containing approximately 270 grams of cocaine, consistent with crack cocaine, and tens of thousands of dollars in cash.

On February 13, 2019, a grand jury returned an indictment (the "Indictment") charging Bryant and Edwards with one count of narcotics conspiracy, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A), for conspiring to distribute 280 grams and more of crack. The Indictment also charged Bryant with one count of possession of a firearm in further-ance of the narcotics conspiracy charged in Count One, in violation of Title 18, United States Code, Section 924(c) and one count of being a felon-in-possession of a firearm, in violation of Title 18, United Sates Code, Section 922(g). The case was assigned to Your Honor.

Edwards has since pleaded guilty to a superseding information, charging him with narcot-ics conspiracy in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B), for distributing 28 grams and more of crack and 500 grams and more of cocaine. His sentencing is scheduled for January 17, 2020.

Bryant has moved to suppress all of the evidence found pursuant to the searches of the Bryant Residence and the Kia.

## ARGUMENT

I.  **The Evidence Seized from the Bryant Residence and the Kia Should Not Be Sup-pressed**

Bryant argues:

1) the evidence seized from the Bryant Residence must be suppressed because the Bryant Residence Affidavit had insufficient probable cause (Motion at 6–8);

2) the evidence seized from the Bryant Residence must be suppressed because the warrant should not have included a "no-knock provision" (Motion at 8–9);

3) the evidence seized from the Bryant Residence and the Kia must be suppressed because the information in the Bryant Residence Affidavit and the Kia Affidavit were too stale

2

to support issuance of the warrant (Motion at 9–11);

4) the evidence seized from the Bryant Residence and the Kia must be suppressed because the agents failed to file a warrant return (Motion at 10).

As described herein, each argument is wrong, and there is no basis to suppress any of the evidence recovered from the Kia or the Bryant Residence.

### A.    Applicable Law

#### 1. Probable Cause

A judge's finding of probable cause is afforded significant deference. "A reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists . . . . The reviewing court's determination should be limited to whether the issuing judicial officer had a substantial basis for the finding of probable cause." *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993) (internal citations omitted) (reversing suppression order). Moreover, as the Supreme Court recently reiterated, "[p]robable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). "A judge's probable-cause determination is not overly strict. Presented with a warrant application, the judge must 'simply . . . make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Martin*, 426 F.3d 68, 74 (2d Cir. 2005) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

"The quanta of proof necessary to establish probable cause is 'only the probability, and not a prima facie showing, of criminal activity.'" *Wagner*, 989 F.2d at 72 (quoting *Gates*, 462 U.S. at 235). Moreover, "[p]robable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules."

3

*Martin*, 426 F.3d at 74 (quoting *Gates*, 462 U.S. at 232).  Thus, "[i]n assessing probabilities, a judicial officer must look to 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (quoting *Gates*, 462 U.S. at 231).  "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)).  Such determinations must be approached in a practical way, because "probable cause is a flexible, common-sense standard." *Gates*, 462 U.S. at 231-32; *Texas v. Brown*, 460 U.S. 730, 742 (1983). Additionally, the training and experience of law enforcement agents bear significantly on probable cause determinations.  *Gates*, 462 U.S. at 232.  Inferences drawn by law enforcement agents based on facts known to them, the totality of the circumstances, and their training and experience can all support a probable cause finding.  *Id.* at 231-32.

Once a warrant has been issued by a judge and executed, the duty of a court reviewing a magistrate judge's probable cause determination on a motion to suppress is far more limited: its task is "simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238-39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).  The issuing magistrate's decision is "entitled to substantial deference, and doubts should be resolved in favor of upholding the warrant." *United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993) (internal quotation marks omitted).  Indeed, the magistrate's "finding of probable cause is itself a substantial factor tending to uphold the validity of [the] warrant." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983).  "Such deference derives not only from the law's recognition that probable cause is 'a fluid concept' that can vary with the facts of each case, but also from its 'strong preference' for searches conducted pursuant to a warrant." *United States v.*

4

*Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Gates*, 462 U.S. at 232, 236).  Thus, as described in *Clark*, the "task of a reviewing court is simply to ensure that the 'totality of the circumstances' afforded the magistrate 'a substantial basis' for making the requisite probable cause determination."  *Clark*, 638 F.3d at 93 (quoting *Gates*, 462 U.S. at 238).

As to the issue of staleness, "[i]n determining whether probable cause exists, the magistrate is required to assess whether the information adduced in the application appears to be current, i.e., true at the time of the application, or whether instead it has become stale."  *Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991).  "Narcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness.  Indeed, if a criminal enterprise is appropriately extended, information can remain fresh for probable cause purposes for years."  *United States v. Feola*, 651 F. Supp. 1068, 1090 (S.D.N.Y. 1987) (internal citations omitted).  "Facts of past criminal activity that by themselves are too stale can be sufficient if the affidavit also establishes a pattern of continuing criminal activity so there is reason to believe that the cited activity was probably not a one-time occurrence."  *Wagner*, 989 F.2d at 75; *United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990) ("Given the continuous nature of narcotics conspiracies . . . the approximately 18-month delay between procuring the informants' statements and seeking the wiretap warrant did not render the information stale.")

### 2.  Good Faith

Even if a warrant lacks probable cause or particularity, "[t]he fact that a Fourth Amendment violation occurred . . . does not necessarily mean that the exclusionary rule applies."  *Herring v. United States*, 555 U.S. 135, 140 (2009).  "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  *Id.* at 144; *see also Rosa*, 626 F.3d

at 64, 66.  As a result, exclusion should be a "last resort" rather than a "first impulse." *Rosa*, 626 F.3d at 64 (quoting *Herring*, 555 U.S. at 140).  Thus, suppression will generally not be warranted where the evidence at issue was "obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984).  Although the burden is on the Government to establish good faith, "[s]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search."  *Id.* (citations omitted) (internal quotations omitted); *see also Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (noting that the "issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause").

Accordingly, in light of this exception, "the Supreme Court [has] strongly signaled that most searches conducted pursuant to a warrant would likely fall within [the] protection" of the good faith exception.  *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011) (citing *Leon*, 468 U.S. at 922).  Indeed, there are only four narrow circumstances in which the good-faith exception does not apply: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable".  *Id.* (quotation marks and citations omitted).

### 3.  No-Knock Warrants
The Fourth Amendment includes an obligation that "law enforcement officers must announce their presence and provide residents an opportunity to open the door," including while executing valid search warrants.  *See Hudson v. Michigan*, 547 U.S. 586, 589 (2006) (citing *Wilson*

6

*v. Arkansas*, 514 U.S. 927, 931–932 (1995)). The "knock-and-announce" requirement is also a statutory requirement for federal warrants. *See* 18 U.S.C. § 3109 ("The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant").

However, law enforcement officers can execute search warrants without knocking, when there is "reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *See Richards v. Wisconsin*, 520 U.S. 385, 394 (1997). The Second Circuit has thus reasoned that judges can issue warrants that specifically authorize execution without knocking. *United States v. Tisdale*, 195 F.3d 70, 72 (2d Cir. 1999) ("*Richards* approved the issuance of no-knock warrants"). Further, even if such issuance was invalid, the "good faith" exception still applies, and "officers c[an] rely in good faith on the no-knock warrant." *Id.* at 73.

Regardless of the propriety of the issuance of a "no knock" warrant, or whether officers relied on such a warrant in good faith, the Supreme Court and Second Circuit have held that there is no basis to suppress, either under the Fourth Amendment or 3109, evidence obtained for a violation of the knock and announce requirement. *United States v. Acosta*, 502 F.3d 54, 61 (2d Cir. 2007) ("a claim by a defendant that federal officers violated the knock-and-announce rule under either the Fourth Amendment or 18 U.S.C. § 3109 cannot form the basis for suppression of the evidence obtained in the ensuing search"); *Hudson*, 547 U.S. 586 (no basis for suppression under the Fourth Amendment).

**4. Rule 41**

Federal Rule of Criminal Procedure 41 requires, among other things, that the "officer executing the warrant must promptly return it--together with a copy of the inventory--to the magistrate judge designated on the warrant."  Fed. R. Crim. P. 41(f)(1)(D).  While the Second Circuit does not "countenance" "lack of compliance" with the "technical requirements" of Rule 41, "violations of Rule 41 alone should not lead to exclusion unless (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." *United States v. Allen*, 169 F. App'x 634, 636 (2d Cir. 2006) (citing *United States v. Burke*, 517 F.2d 377, 386–87 (2d Cir. 1975)).  As a result, a failure to file a prompt return "does not require suppression" absent the two exceptions laid out in *Allen*.  *See United States v. Jacobson*, 4 F. Supp. 3d 515, 528 (E.D.N.Y. 2014); *see also United States v. Dudek*, 530 F.2d 684, 688 (6th Cir. 1976).

**B.    Discussion**

**1. Judge McCarthy Correctly Found There Was Probable Cause to Search Bryant's Residence and the Kia**

Judge McCarthy had a "substantial basis," *Gates*, 462 U.S. at 238–39, for concluding that there was probable cause as of December 11, 2018, that both the Bryant Residence and the Kia would contain evidence of the subject offenses, such as drugs, drug proceeds, and/or documents related to drug dealing.

In both search warrant affidavits, Agent Bryceland described his more than 20 years' experience as an FBI Special Agent, and his participation in numerous prior investigations into narcotics trafficking.  (Kia Affidavit ¶ 1, Bryant Residence Affidavit ¶ 1).  Agent Bryceland explained that Bryant had been selling narcotics, over the course of at least three months (May through July 2018), to a confidential informant.  (Kia Affidavit ¶ 6, Bryant Residence Affidavit ¶ 6).  With

8

respect to the Bryant Residence, Agent Bryceland stated that on three occasions, Bryant was seen at the residence right before the controlled purchases.  (Bryant Residence Affidavit ¶ 6(a)).  Further, in the Bryant Residence Affidavit, Agent Bryceland described surveillance he had participated in on November 29, 2018, less than 2 weeks before issuance of the search warrant, in which he observed Bryant leave the residence and complete what Agent Bryceland believed, based on his training and experience, to be a narcotics transaction.  (Bryant Residence Affidavit ¶ 6(e)).

With respect to the Kia, Agent Bryceland stated that on several occasions, Bryant was seen using the Kia immediately before the controlled purchases, Kia Affidavit ¶ 6, and that Agent Bryceland had participated in surveillance, as recently as September 26, 2018 -- about two and a half months before issuance of the warrant -- in which he observed Bryant driving the Kia to meetings, which in Agent Brycelnad's training and experience, appeared to be narcotics transactions.  (Bryant Residence Affidavit ¶ 8).

This easily clears the bar laid out by the Second Circuit in *Wagner*, that probable cause is "only the probability . . . of criminal activity."  989 F.2d at 72.  Nor is there any staleness problem: Agent Bryceland observed what he believed was a narcotics transaction from Bryant's residence within 2 weeks of obtaining the warrant.  Likewise, he described what he believed was a narcotics transaction from Bryant's car within a few months of obtaining the warrant for the Kia. In any event, narcotics conspiracies are continuous, and the information in warrant affidavits can remain fresh for years.  *Rowell*, 903 F.2d at 903.

Bryant's arguments do not engage with the "substantial deference" given to judicial findings of probable cause, *Wagner*, 989 F.2d at 72, nor its "practical" standard.  *Martin*, 426 F.3d at 74.  He picks at individual elements of the affidavits, a task wholly inconsistent with *Gates.*  462

U.S. at 245 n. 14 (criticizing the dissent's "line-by-line scrutiny" which is "inappropriate in reviewing [the] magistrate's decisions").  Much of his criticism of the affidavits are speculation, which is inconsistent with the Supreme Court's long-standing warning that "probable cause is not a high bar," *Wesby*, 138 S. Ct. at 586, and not subject to the "fine resolution of conflicting evidence" applicable in other legal proceedings.  *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975).  But even this narrow focus fails on its own terms:

- Bryant criticizes the Affidavits for stating Agent Bryceland's experience in conclusory terms, without specific reference to the "number of investigations" that he had participated in.  Motion at 6–7.  That argument is inconsistent with Agent Bryceland's description of his own experience: that he at the time he had been a Special Agent for more than 22 years (Bryant Residence Affidavit ¶ 1).  It is also irrelevant to whether Agent Bryceland had appropriate reason to believe Bryant was engaging in narcotics trafficking from the Residence;

- Bryant then attempts to undermine the warrant by critiquing the fact that the CI did "not provide any supporting evidence that the apartment was in any way a location where drugs were stored or processed."  Motion at 7–8.  Of course, that flips the probable cause standard on its head: the question is not what information could have been included to strengthen the warrant, but whether the affidavits on their own included sufficient probable cause to support the warrant.

- Bryant does the same in trying to undermine the warrant for the Kia by castigating the omission of any evidence from the Government's tracking device.  Motion at 10–11.  Once again, this is inconsistent with the actual standard set forth by the Supreme Court and Second Circuit, *Gates*, 462 U.S. at 245 n. 14.

10

Bryant thus makes no meaningful argument that Judge McCarthy erred in issuing the warrants based on the Bryant Residence Affidavit or Kia Affidavit.

### 2. In the Alternative, the Agents Relied on Judge McCarthy's Warrants in Good Faith

Bryant does not cite binding case law regarding the good faith exception, and thus simply elides any analysis for why the FBI's reliance on Judge McCarthy's warrants was in bad faith. Needless to say, even were the Court to determine that Judge McCarthy erroneously issued the warrants, there were numerous indicia of probable cause in Agent Bryceland's affidavits, including the fact that Bryant was dealing crack, was involved in a narcotics conspiracy with Edwards, and that he lived at the Bryant Residence and used the Kia. *Contra Clark*, 638 F.3d at 103 ("[s]uch a concern most frequently arises when affidavits are bare bones"). The agents relied on the search warrants issued by Judge McCarthy in good faith, and there is thus no basis to suppress the fruits of those searches.

### 3. The No-Knock Provision was Proper, and Regardless, Violations of the Knock and Announce Rule Do Not Lead to Suppression

Agent Bryceland described in general terms in the Bryant Residence Affidavit why a no-knock provision was proper: given that the FBI was investigating a large-scale narcotics trafficking operation there was "reasonable suspicion" that "knocking and announcing" would jeopardize the investigation. *Richards* 520 U.S. at 394. Even if there was insufficient suspicion to justify inclusion of the no-knock provision, the agents could rely on the provision in good faith. *Tisdale*, 195 F.3d at 72. And even if they could not, and the agents should have knocked-and-announced their presence before entering Bryant's Residence, there is no basis under the Constitution or federal law to suppress physical evidence obtained from a violation of that requirement. *Acosta*, 502 F.3d at 61.

### 4. The FBI Properly Filed a Rule 41 Return

The Government did not disclose in discovery the fact that the FBI had in fact returned the warrants and inventories to the Clerk of Court (it appears as if the returning agents failed to make copies of the returns before filing them). The Government apologizes for the oversight. The Government obtained an unsealing order from the Court, and the Court's deputy incredibly helpfully showed the Government the returns and made copies. The Government appends these copies to the instant memorandum as Exhibits A and B. Thus, there was no violation of Rule 41, and thus this provides no basis for suppression.

### CONCLUSION

For the foregoing reasons, Bryant's motion to suppress physical evidence seized from his Residence and Kia should be denied

Dated: New York, New York
        January 15, 2020

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By:    _____/s/_____
        Samuel L. Raymond
        Assistant United States Attorney
        (212) 637-6519

12